STATE of Maine

v.

Edward FOSTER.

Supreme Judicial Court of Maine.

Dec. 2, 1977.

Charles K. Leadbetter (orally), Fernand R. Larochelle, Asst. Attys. Gen., Augusta, Henry N. Berry, III, Dist. Atty., Portland, for plaintiff.

Ray R. Pallas, Westbrook (orally), for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, and GODFREY, JJ.

GODFREY, Justice.

Appellant Foster was indicted for "solicitation to murder," found guilty by a jury,

and sentenced to jail. From the evidence, the jury was warranted in concluding that in 1974 Foster, then a policeman, engaged in a month-long effort to enlist fellow policemen in a "death squad" to eliminate certain chronic offenders by executing them. A number of meetings with three other policemen had resulted in selection of a first victim from a list prepared by appellant and in plans for the manner of execution and disposal of the victim's body. The theory of the defense, rejected by the jury, was that the entire proposal had been made in jest.

When Foster engaged in that activity, "solicitation to murder" was not defined as a crime by statute in Maine, but Foster was indicted and convicted on the basis that his behavior constituted a common law crime. On this appeal two questions are presented for our consideration; namely, whether the crime of solicitation to murder existed in Maine law at the time of the indictment and whether the indictment as drawn sufficed to charge that crime. The latter question presents no difficulty: The indictment met all requirements to charge the crime alleged. *State v. Ames*, 64 Me. 386 (1875).

■ Before the new Criminal Code went into effect in 1976, the law of Maine had been long settled that acts not defined as criminal by statute were nonetheless punishable as crimes at common law. *State v. Ames*, 64 Me. 386 (1875); *State v. Beckwith*, 135 Me. 423, 198 A. 739 (1938); *State v. Dumais*, 137 Me. 95, 15 A.2d 289 (1940); *see Smith v. State*, 145 Me. 313, 316, 75 A.2d 538, 540 (1950). Solicitations to commit acts less serious than murder have been held indictable as common law offenses in Maine: soliciting a witness to absent himself from a court where he is legally bound to appear (*State v. Ames, supra*); soliciting the commission of arson (*State v. Beckwith,*

supra); soliciting the offer of a bribe (*State v. Dumais*, supra). In *Beckwith* and *Dumais*, the court declared it to be the rule that solicitation of a felony was an indictable common law offense regardless of whether the solicitation was effective or the crime advocated was in fact committed. *State v. Beckwith, supra*, at 425, 198 A. at 740; *State v. Dumais, supra*, at 97, 15 A.2d at 290.

The Maine Criminal Code, effective May 1, 1976, abolishes common law offenses. 17-A M.R.S.A. § 3 (1976), as amended by 1977 P.L., ch. 510, § 13. However, it also proscribes solicitation of major crimes. 17-A M.R.S.A. § 153 (1976), as amended by 1977 P.L., ch. 510, §§ 35-37. Thus the Code manifests legislative approval, not rejection, of the established judicial precedents in Maine holding the solicitation of serious crime to be criminal. We see no reason for not applying those precedents to appellant's conduct in 1974.

Appellant contends that the enactment of title 17 as part of the Tenth Revision, in 1964, of the Maine Revised Statutes had the effect of superseding earlier Maine cases recognizing common law offenses. Even though title 17 contained no provision on the subject, he argues that the Maine Constitution, article X, section 3, requires that result.[1] The basic premise of his argument is that title 17, as enacted in the 1964 revision, was intended as a comprehensive codification of the criminal law. That premise is not correct. Unlike the new Criminal Code, title 17 was not enacted as a systematic, integrated body of criminal law. Its enactment was merely part of a general plan, involving all thirty-nine titles, to update and reorganize the existing statutes of Maine. From the language of the legislative mandate in 1963 to the committee on revision of statutes[2] and from a comparison

1. "All laws now in force in this State, and not repugnant to this Constitution, shall remain, and be in force, until altered or repealed by the Legislature, or shall expire by their own limitation."

2. Chapter 93 of the Maine Resolves of 1963 authorized the Revision of Statutes Committee

to proceed as follows in preparing the Tenth Revision:

"Said committee, with the assistance of the Director of Legislative Research, is authorized to consolidate all the public laws now in force and such as may be enacted at the present session of the Legislature; to omit from said revision all such statutes and acts

 

of offenses defined in the Ninth and Tenth Revisions of the Maine criminal statutes it appears plainly that substantive changes in Maine's criminal law were neither intended nor made by the 1964 redaction of provisions into title 17. Common law offenses were unaffected by the Tenth Revision.

■ Appellant asserts, for the first time on appeal, that the common law did not give him adequate notice that his conduct was forbidden. Since appellant did not present that argument to the trial court, the question is not properly before us for consideration. *State v. DeCesere*, Me., 379 A.2d 1221 (1977).

The entry is:

Appeal denied.

Judgment affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

POMEROY, WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J., concurring.

as have been repealed or superseded; to arrange the chapters and sections of the revision so that relative subject matters will be contiguous as far as possible; to add annotations to all decisions interpreting the statutes and the Constitution of the State of Maine; to correct the notes and references for new sections; to prepare a cross reference table showing where the sections and chapters of the 1954 revision and laws amendatory thereof appear in the new revision; and to report a final draft of such revision in print."

The Director of Legislative Research made clear that this mandate had been carefully followed when he wrote in his report:

"By agreement between the Revision of Statutes Committee and the Director of Legislative Research no changes of a substantive nature were introduced into the Revision. It was felt that substantive changes should be presented to the Legislature in regular session to permit due legislative deliberation. This Revision, therefore, contains only mechanical changes." M.R.S.A. vol. 1, p. XVII (1964).